Good morning, Your Honor. It's John Brick on behalf of Ranger Pipelines, Inc. I would like to request two minutes for rebuttal. That'll be fine. I'll try and help you keep an eye on the clock. Thank you, Your Honor. I need to apologize to the panel in advance. Of all mornings, I have a slight contact problem this morning and my focus is a little off. I may have to draw my papers up a little bit to focus in on them. Not a problem. I also appreciate the court sending out the questions that it had to be addressed so that we could focus in on those. It certainly makes our job a little easier. And if I may, I think the second question, at least from my perspective, is a little more straightforward and would like to start with that one, which is whether a plaintiff is required to plead facts supporting equitable estoppel with particularity under federal rule of civil procedure 9B. The short answer to that, as to the averments of equitable estoppel in this case, is no. And the reason for that is in this case's decision in VESS, V-E-S-S, versus CIBA, CIGI Corp., and that's 317 F3rd 1097. Is that C-I-P-A? C-I-B-A. Oh, T-I-B-A. No, C as in cat. C-I-B-A, I apologize. Oh, C-I-B-A, like the drug company, right? Yeah. And it's 317 F3rd at what? At 1097, Your Honor. 1097. Okay. The court stated that it had not analyzed the application of Rule 9B in a case where fraud is not an essential element of the claim. What year is that case? That is, excuse me, 1993, excuse me, 2003. So that's before Iqbal and Twombly came down? The Supreme Court cases that raised the, I don't know if it raised the bar, but it clarified the pleading requirements under the federal rules of civil procedure. It did, Your Honor. We're talking about Iqbal and Twombly coming down that clarified the rules of pleading under the rules of civil procedure. Yes, Your Honor. Are you hearing okay? Are you able to hear okay? Okay. I don't believe that that ruling in Twombly and Iqbal affects the ruling that when fraud is not an essential element of the claim, it needs to be pled with particularity under Rule 9B. Rather, when fraud is not an essential element of the claim, it falls under the general pleading rules of Rule 8, which were addressed. What about Guerrero v. Gates? Did you look at Guerrero v. Gates? Because that's what suggested, at least to me, that Rule 9B's heightened pleading standard might apply to a complaint inserting equitable estoppel. I did not see that particular case, Your Honor. Okay. The cases I found, as I say, the Vest case indicated that where fraud is not an essential element, the rules under 8 still apply. Mr. Brinkley, let me ask you a factual question, which I haven't seen very clearly articulated in the complaint. What is the advice or promise that Ranger is relying on, to which it relied to its detriment in not earlier making claim of Lexington as an additional insured under the regent's master builder's policy? It is really the result of the various meetings that were held after the initial claim was put in by the regents. I think the complaint alleges that there were a series of meetings beginning in April of 2009 at which Lexington participated. In those meetings, it was made clear that a claim had been made, that Lexington was adjusting that claim, that those issues were being worked out, even though the details of that were never disclosed to RPI. RPI was never told, if you have additional claims, you need to make those to the regents. I understand that they weren't told, but as I understand an equitable estoppel, one of the elements is that some affirmative statement or assurance is made on which Ranger must rely to its detriment in invoking the doctrine of equitable estoppel to excuse its late file claim. Do you understand my question? I do, and I think the statements there would be the fact that RPI was told that the claim, which they understood to be the entire claim, was being adjusted and was being handled. And where is this cited in the complaint? I believe paragraphs 32, 33, 34, 35, and 36 contain those allegations. Let me test that a little bit. I read those paragraphs, but I find the allegations to be quite conclusory and bereft of any pleading of a specific representation that was made attributed to some representative of Lexington. What I read there is that, well, we attended these meetings while the claim was being adjusted, but I don't see any attribution of a statement to anybody that Ranger was relying on. I believe that the allegations would include the reasonable reference that Lexington was involved in conversations, that we are adjusting the claim, we don't see any problem with RPI's work. In fact, we would ask that RPI assist us, assist our investigator in determining what the cause of these problems were, which they did, and there was never an indication, in other words, an omission of an indication to say, we are only adjusting certain claims. You have property that is damaged here that was not finally accepted by the regents. If you've got a claim for that property, you need to make that separate. Let me ask the question in a different way. If we remanded and told the district court, permit RPI to file a second amended complaint, what additional facts would you allege in that complaint in order to show an affirmative representation on which RPI relied? If that were the case, Your Honor, we would allege more specific representations made at those meetings by Lexington. Can you give me an example? A specific statement that was made by a representative of Lexington? Oh, don't worry, RPI, we're taking care of everything here? It's my understanding, Your Honor, that statements were made to the effect of we are— What were they? Sorry? What were those statements? That the claim is being adjusted. In other words, we are handling the entire claim that's been submitted by the regents. But that's a pretty general statement. There's no question that the regents submitted a claim. I don't think anybody's disputing that. That's correct. But what troubles me about the allegations in the complaint is I don't see any allegation that RPI took any affirmative steps to formally tender a claim or even to obtain a copy of the claim that regents had submitted so that it knew what the scope of the claim was. I mean, the problem is you've got this master policy that ensures a whole bunch of parties beyond just the regents. And I see the provision in the policy that makes the regents the go-between, the point of contact between Lexington and all of the insurers. But Ranger didn't do anything to satisfy itself that its interests were being protected. And I think the point, Your Honor, is that they believed their interests were being protected as an insured based on the meetings they attended and the presentations made that we are handling the claim. Without knowing what the claim was, other than that it was a claim that dealt with damage to the piping system. Correct, Your Honor, the piping system that they installed. Well, they and others, right? I assume that there were others besides Ranger who were involved if it's, what is it, $30-some-odd million? In the project as a whole, that's correct. They were primarily responsible for the piping that went into these vaults. And so the fact that they were told a claim for high heat damage has been submitted, a claim for damage to the pipes has been submitted, that was their work. Now that work had not been finally accepted by the regents, but it was the property that had been installed by RPI up until that time, and they were told we have put in a claim for these damages. Can I just go back to a slight difference in the question that my colleague just asked you? We have the fact, the First Amendment complaint before us. We have to determine whether Iqbal and Twombly 9B specificity is required. Do you believe, as you talked to us this morning, that the fact contains all of the pleadings that are required for you to show that you relied upon a specific thing that was said and were damaged thereby? I believe that the allegations of the First Amendment complaint state a plausible claim and that the reasonable inferences from those allegations set up a situation where the case should not have been determined on a motion to this. Forgive me. Point to me, just a specific, read to me the specific language, the promise that you think most meets the requirement for equitable estoppel here, the one that your company relied upon.  The first one, Your Honor, is in paragraph 20. What line? Paragraph 20 lines 2 and 3. And what does that say? Well, that is where the, actually it starts on page 1. RPI was informed that the Regents was filing a claim for water damage and high heat damage. Okay, now that's a very general statement. Is there anything in there that says that Mr. or Ms. X said X and we relied upon that? There is no specific allegation that an individual made a statement. The allegation is more general but does provide enough information to indicate that RPI was told a claim for damage to your work has been made. And you believe that a cause of action can be made out either under the notice pleading requirements or under the more specific requirements of 9B without such a statement? Well, I believe under the general requirements of 8 we do qualify. I don't believe 9B applies to the equitable estoppel here because fraud, as interpreted under California law, excuse me, equitable estoppel does not require averments. Well, that's basically what you're relying upon is that since no fraud is involved here, Iqbal, Twombly, and 9B, specificity is not required. Is that correct? Correct. You're okay. All right. You want to? I just, on the equitable, I just want to make sure I understand your complaint. Are you saying for the pleading standard for equitable tolling, it looks like you briefed Iqbal. Is that what you believe applies? I do believe that the facially plausible standard does apply very briefly. And I notice my time is running out. That's okay. And then let me ask you, why didn't you provide the date that Lexington denied the Regent's claim? First of all, Your Honor, we were not provided with that information. And I'm not sure it's correct. But do you, I mean, do you don't think you have the ability or the obligation to file whatever information you do have regarding that? Well, the Regents paid, excuse me, Lexington paid a portion of the claim. It wasn't an outright denial. They did not go back to Regents and say we are denying your claim in total. What they did is they had an arrangement with the Regents where they would pay them some $5.5 million. RPI was aware that a payment had been made. They weren't aware of the details of it. And they weren't aware that the Regents was then taking a position that this only covers a portion of the property damage and it doesn't cover that portion to the work of RPI, which was damaged. And, therefore, that is what kind of makes it a denial of that portion of the claim. So are you saying that you think that was only a partial adjustment of the claim? Because as I understood it, it was a $35 million claim. No, a $35 million claim on a $28 million policy for which Lexington tendered $5.5 million on December 16 of 2010. The $35 million claim came in the lawsuit. I don't know the details of the Regents' claim that was put in to Lexington, but I do know that they had a $28 million policy. I know a claim was put in. I know RPI was told we're adjusting that claim, which they were led to believe included their property. They were aware that a payment had been made. Then they get sued. At that point, they're told, you need to go make your own claim, which they had not been told before. Okay. I'll give you a minute in rebuttal. Let's hear from Lexington. Thank you. Thank you, Mr. Brown. May it please the Court, Wayne Glaubinger for Eppley Lexington Insurance Company. I'd like to focus initially on the Court's inquiry concerning equitable estoppel. There is no affirmative statement or assurance pled or identified, notwithstanding that Judge Hamilton gave. The claim was Regents. It can't transform into Ranger, as Judge Hamilton stated. The belief that Regents was not going to hold Ranger responsible and later on did file what would be a liability claim has no bearing on Lexington. It may have a bearing as between Ranger and Regents, but not Lexington. As the Court stated, there's no allegation that Lexington caused Ranger any delay in bringing its claim. For context, there's a reason for that. Let me ask you this, counsel, if I may. Is it Lexington's position that for purposes of stating a cause of action under the fact for equitable estoppel, that Rule 9b pleading requirements apply? Yes. With respect to the question raised by the Court on 9b, we would cite, Your Honors, to two cases, Guerrero v. Gates, where the Court held additional fraudulent behavior must be pled with particularity, including equitable estoppel. That's at 357F3D911. A year later, in Wasco Products, 435F3D989, involving civil fraud and conspiracy, the same ruling was made. The pleading requirements were heightened. And if you apply, if you look at the complaint here. Forgive me one second. I just want to be sure of something. In each case you mentioned, there was fraud involved here. Your counterpart takes the position that this is not a case that sounds in fraud. Yes. It's an equitable claim. They're saying that the insurance company said something or some things upon which the pipeline relied. As far as I can tell, there's no claim of fraud. Are you claiming there's fraud involved in the equitable estoppel argument? There's claim of misleading conduct. Paragraph 3638. Is that the same as fraud? It's not the same, but there's two district court decisions, at least two California decisions, Judge Huff in Seaboard International and Judge Ten in Barnes & Noble, who reached the conclusion that 9b applies to what they call misleading conduct. I would respectfully suggest misrepresentations, claim for punitive damages, a claim for breach of good faith and fair dealing, the fact that they claim we misrepresented various things rises to that level. But even if we put 9b aside, there is no plausible claim here in connection with the claim against my client. And as the judge said, sort of hearkening back to the first question of the court, Ranger has not pointed to anything that Lexington did or did not do or did or did not say that prevented Ranger from bringing suit with a one-year suit limit. And I think, Your Honor, what really happened was a claim was made by Regents. There was no doubt about that. Years went by, and then Regents sued Ranger separately, having nothing to do with that claim. And when they received that, they filed notice to Lexington trying to make an insurance claim, but it was time borne. So that's why they're being very careful not to say they made a claim or they asked Regents to make a claim, because they didn't. That's not what happened. What happened was it came too late. Mr. Gravinger, you made a statement that Judge Hamilton gave them leave to plead further. Was this after she dismissed the First Amendment complaint? No. The initial motion dismissed we brought and the judge gave them, as she cites in her second opinion, which is before the court, she gave them the right to plead to amplify on their claims. And so then now we have the First Amendment complaint that responds to that. Yes. They've had that right, and Judge Hamilton does refer to that in her decision before this court. Okay. All right. No further questions. Go ahead. I just wanted to, we've been talking about equitable stop. I want to talk about equitable tolling. And what's the governor pleading standard for equitable tolling? Equitable tolling, if we go back, I guess, to the question the court asked, I don't know if you want to, Cervantes and Jablon and Supermail, was the pleading standard before Twombly and then Iqbal from the U.S. Supreme Court. It was our position that clearly Twombly and Iqbal changed the standard of Cervantes and Supermail by getting, because Supermail, Conley, excuse me, Supermail and Jablon and Cervantes were all grounded in the Conley decision from the U.S. Supreme Court, and Twombly makes clear that Conley was retired and no longer the law. And I guess my question for you is why didn't you submit the denial letter? Why didn't you submit the denial letter for Lexington? Why wasn't the denial letter from Lexington ever submitted? The denial letter? The denial letter, which is identified but not specifically by date in plaintiff's complaint, they said X amount was paid and Y amount. We simply put the date in. But why didn't you submit the letter? Because if you were going to go with this argument that we latched on to Regents' claim, it would still be too late because the law says you only get tolling for the period up to denial. So if you even give them the benefit of that doubt, it was denied in December 2010, which left 10, let's say 12 months. Where is that in the complaint, the date of denial? It doesn't have the date, but I would say it refers to the denial, and I would suggest under Townsend v. Columbia, citing ASPE, it would not be inappropriate for the court to consider it. When we put that in on our motion. Wait, wait, wait, wait. Here you're talking about a pleading, whether or not 9b applies. It seems to me that, for example, whether the Regents filed a claim on behalf of Ranger is a factual question that can't be resolved without examining issues outside the context of the complaint. That's the first part of it. Do you agree with that? Not completely, Your Honor, because Townsend sort of addresses that issue, as does ASPE. If the pleading puts something at issue, here they said 5 million was paid. Here they also said 28 million was left, meaning it was denied, but they didn't put the date in. I believe the court, Townsend is a good example, would incorporate it, but as a practical matter, they could have said move to strike the affidavit, judge convert this to Rule 56, we want discovery. They didn't because they know the date. They didn't do that, but as a practical matter, you could have submitted the denial letter, and you didn't. We submitted the denial, and we put the date in because we thought that was the proper way for the court to take notice, and we know it was not objected to because they had it, but we did not put the actual letter in. So that I'm clear, we're referring to the Daniel S. Leverton declaration? Yes, Dan Leverton. Paragraph 6. Right, and he was the claims person who handled the claim, so would have known the date and the check amount. Yeah, but we can't consider the affidavit. No, and you don't even have to get there because, in the first instance, this was never a ranger claim. That only comes into play if you talk about their $5 million that they plead, and it was denied. It's still too late because they're in 2012. But that gets back to the question that I asked you a few moments ago regarding equitable tolling, and that is where did the judge get the fact that ranger did not rely upon the regents to file this claim? If you look at the actual language of the insurance policy, it seems to suggest that that's the only way that a claim can be filed, because you've got additional insurance of which ranger is one. I just want to know how the trial judge was able to determine, just from looking at the fact, that there was, in this situation, no claim made by ranger. I think the court stated correctly so. They filed a claim in March 2012. They knew how to file a claim. There's no allegation they ever asked regents to file a claim on their behalf. But, counsel, with respect, you're not listening to what I'm asking you. My question is the insurance policy, which is clearly before the court, says that regents files these things on behalf of the additional insurance, or at least that's one way to look at it. That seems to be the allegation that ranger has made here. The district court made a determination that they didn't file anything. How did the district court do that based upon the four walls of the complaint? The distinction, Your Honor, I think is as follows. The claim in the complaint is that they somehow latched on to regents' claim without regents ever knowing about it, without Lexington ever knowing about it. This is not a situation where they asked regents, nor did they plead that they asked regents. But we're talking about pleading here. I understand that if you're talking about discovery and maybe it's in summary judgment, you can put all this in. But at the pleading stage, they get the benefit of the doubt, do they not? They get the benefit of the doubt. They get the benefit of the doubt on a plausibility standard, Your Honor. Isn't it plausible if the insurance policy says that a claim must be made by regents, in this case on behalf of the additional insurance? That's what they said happened. The judge said, no, no, no, they didn't make a claim. And I don't know what she relied upon, but the reality is unless you go outside the walls of the complaint, I don't see how that determination was made. Well, I think part of the determination is the judge said, well, why did you submit your March 2012 claim? Because you understood you never made a claim yourself, and that was in the complaint. But again, with respect, we're talking about pleading here. Yes, I understand. The district judge could go on and have a nice colloquy with them and ask them a whole bunch of things, but that's really not what we're supposed to be looking at, is it, at that stage of the game? Then any additional insurer, there's 50 of them who are on this, could take the position that Ranger's claim included theirs without any proof or allegation at all factually to show that. Well, at the pleading stage. And I think that's part of the problem. There were probably 50 or 60 additional insurers involved in this project. To suggest that, they could all claim Regents submitted their claim on their behalf and the liability suit should go away and Lexington should pay. But at paragraph 27, it's at ER 171, it reflects that Plain have made a timely complaint for coverage for damages under the terms of the Lexington master's builder risk policy. And it goes on to say when the claim was first made by Regents on behalf of itself and its additional insurance during the period of February 24, 2009 through April 21, 2009. And that Plain have submitted that claim a second time on March 28, 2012. So I'm just wondering, in light of this allegation, if the district court erred by saying what it said regarding the factual determination. Because I don't believe, Your Honor, there's any fact that's in dispute with respect to Regents filing its claim, Ragers staying on the sidelines for two and a half years for a liability claim to come in, and then for the first time only, as played in the complaint, sued that and then trying to latch on but very carefully. Not saying they asked them to make a claim on their behalf. Not saying that Lexington understood they made a claim on their behalf. Not saying they represented that they made a claim. None of that. They can't because they never did. And I think that's critical to the court's review of this pleading and the fact that she allowed them to amend it to show the court that that was not the case. Anything else? Thank you. Thank you very much. Briefly, Your Honors, thank you. As to the Rule 9B, an equitable estoppel, counsel mentioned that the cases state that when additional fraudulent conduct is alleged, you need to go to 9B. California has held that an estoppel may arise although there was no designed fraud on the person sought to be estopped. That's in VU versus Prudential Property and Casualty, 26 Cal 4th, 1142 at 1152-53. They've also held that an insurer is estopped from asserting a right even though it did not intend to mislead as long as the insured reasonably relied to its detriment upon the insurer's action. Relied on what? That's what I keep coming back to. I can see that RPI may have a claim against the regents, but I don't see what it was that Lexington said that RPI relied on to its detriment. Again, I have to go back to the meetings which Lexington attended, and there hasn't been any dispute about that. When I ask you what evidence do you have, the strongest thing you can come up with is the statement in paragraph 20, which is an associate director of the regents, not Lexington. Yes, Your Honor. That was a statement as to what claim had been submitted. I think if you look at the letter . . . Well, I thought it was that . . . I'm looking at the top of page 5 of the stated that regents would not be seeking the $25,000 policy deductible from plaintiff as the regents did not believe that the water damage or high heat damage problems were related to plaintiff's actions. I mean, that may very well be a representation by the regents, but that's not a representation by Lexington. And if you look at paragraph 34, Your Honor, there are allegations that representatives of Lexington informed plaintiff that they believed the negligent design and not . . . Who, what, when, where, and how was that representation made? I don't see that in paragraph 34. I see language that RPI was led to believe, plaintiff reasonably believed, plaintiff was led to believe, Lexington lulled plaintiff. Those are all conclusory allegations without any factual allegations to support them. How can I conclude that that's a facially plausible claim for equitable tolling or equitable estoppel? I think it has to also be remembered that there are duties that Lexington owes to its insureds, including its additional insureds. And I think the inferences that can be drawn when you're sitting in a meeting discussing a claim on a large property claim and you're telling one of us, we don't blame you guys, we want you to help us investigate this claim in the context of an insurer and an insured, that there is a reasonable inference that can be drawn from that. But we don't think you guys are responsible came from Regents, not from Lexington, according to your complaint. Paragraph 34 does allege, Your Honor, that representatives of Lexington informed plaintiff that they believed the problems were caused by the negligent design. Yes, but you can't tell me what the factual allegation is to support that legal conclusion. That's the problem I'm having. In other words, if we gave you an opportunity to file a second amended complaint, what would the evidence be that you would allege? We would have to allege the more specific conversations. What specific conversations? I understand what you need to allege, but what I'm not hearing from you is any evidence. As in the statements that were made by the Lexington representatives? By a Lexington representative. That's the problem I have with your complaint. Well, I do believe that at least the inferences from paragraph 34, while perhaps somewhat conclusory, do allege that Lexington made statements to the plaintiff to the effect that  But getting back to my colleague's question, do you have information as to specifically what the Lexington personnel said to your personnel and upon which your company relied? Specifics, what they said. I don't have them here where I can tell you the name. Have you ever seen them? Anybody ever told you what they were? I have had discussions with representatives of RPI as to these meetings and what occurred at these meetings and what they believe occurred at these meetings and what they were told. And did they ever tell you specific language or approximate language that they say was used? I don't recall the specific language, approximate language and what they believe based on those statements. And failure to make statements. So for our purposes, we should assume that there is no readily available evidence that would allow you to flesh out the specifics of what was said. Is that correct? I believe if allowed to amend at least names of people who were at these meetings and more detail. I wouldn't help. As my colleague has indicated, you've got some specifics you need to provide. And I'm just asking whether it exists. And it sounds like it doesn't. You're asking that we draw inferences. But in connection with an equitable estoppel claim, there are certain specifics and elements that you're required to plead, even under a notice pleading. And I, for one, don't see them there. I'd be interested if there are any. And it doesn't sound like there are. I believe more evidence, again, there hasn't been any discovery, obviously. But more evidence can be indicated. And there's also the issue of the silence as part of the estoppel. In other words, if you, as an insurer, you have a duty to your insured to provide them with certain information. And if Lexington was truly only adjusting a portion of the claim, they didn't tell that to their insured. So there is no specific statement that goes to that. It is the lack of statement which leads to the estoppel. Okay. Thank you very much. The case just argued is submitted.
judges: Tallman, Smith, Murguia